IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

BARK, an Oregon non-profit
corporation, FRIENDS OF
MOUNT HOOD, an Oregon non-
profit corporation,
NORTHWEST ENVIRONMENTAL
DEFENSE CENTER, an Oregon
non-profit corporation, and
SIERRA CLUB, a California
non-profit corporation,

       Plaintiffs,

    v.

LISA NORTHROP, Acting
Forest Supervisor of the Mt.
Hood National Forest, BILL
WESTBROOK, Zigzag District
Ranger, KENT CONNAUGHTON,
Regional Forester for Region
6, and the UNITED STATES
FOREST SERVICE, a federal
agency,

       Defendants,

    v.

RLK AND COMPANY, an Oregon
corporation,

       Defendant-
       Intervenor.

Case No. 3:13-cv-00828-AA
OPINION AND ORDER

Page 1 - OPINION AND ORDER

Ralph O. Bloemers
Christopher G. Winter
Crag Law Center
917 S.W. Oak Street, Suite 417
Portland, Oregon 97205
    Attorneys for plaintiffs

Sean E. Martin
Stephen J. Odell
United States Attorney's Office
1000 S.W. Third Avenue, Suite 600
Portland, Oregon 97204
    Attorneys for defendants

Erika E. Malmen
Robert A. Maynard
Perkins Coie, LLP
1111 W. Jefferson Street, Suite 500
Boise, Idaho 83702

Sarah J. Crooks
Perkins Coie, LLP
1120 N.W. Couch Street, 10th Floor
Portland, Oregon 97209
    Attorneys for defendant-intervenor

AIKEN, Chief Judge:

Plaintiffs Bark, Friends of Mount Hood, the Northwest Environmental Defense Center, and the Sierra Club filed suit against defendants Lisa Northrop, Bill Westbrook, Kent Connaughton, and the United States Forest Service, alleging violations of the National Environmental Policy Act ("NEPA") and the National Forest Management Act ("NFMA"). The Court subsequently granted defendants' and defendant-intervenor RLK and Company's ("RLK") motions for protection, thereby precluding plaintiffs from engaging in discovery and limiting review of plaintiffs' claims to the administrative record in accordance with the Administrative Procedure Act ("APA"). Pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37, RLK moves for expenses, in the amount of $34,170.95,

incurred in connection with its motion for a protective order. For the reasons set forth below, RLK's motion is granted in part, in that attorney fees and costs are awarded in the reduced sums of $10,965.82 and $863.94, respectively.

## BACKGROUND

This dispute arises out of defendants' decision to approve RLK's development proposal for the Timberline Ski Area Mountain Bike Trails and Skills Park (the "Project"). On May 16, 2013, plaintiffs initiated this action, alleging that defendants' acceptance of RLK's Master Development Plan ("MDP") and amendment of RLK's Special Use Permit ("SUP") violated NEPA and was both arbitrary and capricious under 5 U.S.C. § 706(2), and an agency action unlawfully withheld pursuant to 5 U.S.C. § 706(1).[1]

On June 4, 2013, the Court granted RLK's motion to intervene. On June 25, 2013, defendants and RLK stipulated that they would not proceed with the Project until this Court made a decision on the merits. On July 16, 2013, defendants timely answered plaintiffs' complaint. On August 12, 2013, defendants lodged the administrative record, comprising nearly 30,000 pages, for judicial review.

On October 16, 2013, plaintiffs served interrogatories, requests for admission, and requests for production on defendants and RLK. On October 31, 2013, defendants supplemented the administrative record with an additional 1,400-plus pages in response to plaintiffs' concerns about missing documents. In

---

[1] Plaintiffs subsequently filed an amended complaint but did not materially alter their claims.

Page 3 - OPINION AND ORDER

November 2013, defendants and RLK separately moved for protective orders against discovery. Thereafter, the parties extensively briefed these motions, filing replies, surreplies, and a notice of supplemental authority. On February 23, 2014, the Court granted defendants' and RLK's motions and entered a protective order that prevented plaintiffs from further pursuing their discovery requests.

On April 1, 2014, RLK filed the present motion for $34,170.95 in fees and costs based on work performed by Portland attorney Sarah Crooks and Boise, Idaho attorneys Robert Maynard, David Hunt, and Stephanie Regenold; RLK also sought fees for work rendered by paralegal Kim Sampo. Specifically, RLK requests $23,843.29 in fees relating to its motion for a protective order, $8,145.78 in fees arising out of the present motion, and $2,181.88 in costs, predominately for online legal research.

## STANDARD

Under Fed. R. Civ. P. 26(c), a party attempting to avoid discovery may move for a protective order. For good cause shown, the court may issue such an order to "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." Fed. R. Civ. P. 26(c)(1). "The court must award attorney fees to a party who successfully moves for a protective order, unless that party failed to meet and confer in good faith before filing the motion, the opposing party's position was 'substantially justified,' or other circumstances make such an award unjust." Alexander v. Boeing Co., 2013 WL 5701432, *3 (W.D. Wash. Oct. 18,

Page 4 - OPINION AND ORDER

2013) (citing Fed. R. Civ. P. 26(c)(3); Fed. R. Civ. P. 37(a)(5));
see also Rickels v. City of S. Bend, Ind., 33 F.3d 785, 786 (7th
Cir. 1994) (Fed. R. Civ. P. 37 "presumptively requires every loser
to make good the victor's costs").

DISCUSSION

It is undisputed that the parties conferred extensively prior
to RLK's motion for protection, such that the first exception is
not implicated. See RLK's Mot. Expenses 5 (citing Maynard Decl. ¶¶
6-8); Pls.' Resp. to Mot. Expenses 4-11. RLK's entitlement to
expenses therefore hinges on whether plaintiffs were substantially
justified or the existence of other circumstances.

I.    Substantial Justification

Plaintiffs first assert that they were substantially justified
in both seeking discovery and opposing RLK's motion for a
protective order. The party facing sanctions bears the burden of
establishing that its position was substantially justified. See
Yeti by Molly, Ltd. v. Deckers Outdoor Corp., 259 F.3d 1101, 1106-
07 (9th Cir. 2001). An individual's discovery conduct should be
found substantially justified under Fed. R. Civ. P. 37 if it has "a
reasonable basis in both law and fact." Pierce v. Underwood, 487
U.S. 552, 565 (1988). Thus, a position is substantially justified
if it meets "the traditional reasonableness standard - that is
justified in substance or in the main, or to a degree that could
satisfy a reasonable person." Id. (internal quotations omitted).

In this case, plaintiffs sought to discover information
regarding the current and projected parking and day lodge

Page 5 - OPINION AND ORDER

operations at Timberline, as well as the efforts of RLK and/or defendants to evaluate parking capacity; plaintiffs also sought ten years worth of documents concerning parking usage at Timberline. See RLK's Mem. in Supp. of Mot. Protective Order Ex. 1. According to RLK, a protective order was necessary to prevent discovery because judicial review under the APA was limited to the administrative record in existence at the time of the challenged agency action and none of the extra-record exceptions applied. In response to RLK's motion, plaintiffs shifted their focus away from their 5 U.S.C. § 706(2) arbitrary and capricious claims and instead asserted that failure to act claims brought under 5 U.S.C. § 706(1) were not limited to the administrative record, such that discovery should be allowed "to secure documents to develop a factual record by which to evaluate Plaintiffs' claims that the Forest Service failed to engage in legally required NEPA analysis." Pls.' Resp. to RLK's Mot. Protective Order 4-9 (citations omitted).

In evaluating the parties' respective arguments, the Court endeavored to first determine the proper standard of review. Pursuant to that analysis, the Court found that plaintiffs failed to allege a 5 U.S.C. § 706(1) claim:

> [p]laintiffs cannot assert that the acceptance of the MDP
> and amendment of the SUP are final agency actions and at
> the same time argue that these actions should be reviewed
> as failures to act under § 706(1), potentially opening
> the door to a broader scope of review and discovery . .
> . amendment would [also] not permit discovery [because]
> for such a claim to have merit, the Forest Service must
> have been required to perform NEPA analysis before
> accepting the MDP. However, the Forest Service explains
> that the "acceptance" of the MDP is not an "approval" of
> the plan by the agency . . . regardless of amendment, the
> facts of this case do not align with the typical facts in

a "failure to act" case [as such] claims typically involve allegations that a federal agency failed to comply with the substantive requirements of a statute [but plaintiffs here] allege that the Forest Service has failed to act because it has not met NEPA's procedural requirements.

Bark v. Northrop, 2014 WL 715603, *3 (D. Or. Feb. 23, 2014) (citations omitted).

As such, the Court resolved "that the appropriate APA standard of review for plaintiffs' NEPA claims is whether the challenged action is 'arbitrary and capricious' under § 706(2)(A)," and "consider[ed] the motions for protective order in this context." Id. at *4. Ultimately, this Court held that a protective order was warranted because "the narrowness of the APA action for judicial review weighs heavily against discovery" and "plaintiffs have not met their burden of showing that they meet any of the narrow exceptions to the record rule articulated by the Ninth Circuit." Id. at *4-5 (citations and internal quotations omitted).

Plaintiffs now contend that, because defendants and RLK maintained that "acceptance of the MDP and amendment of the SUP was not a 'final agency action,'" and because "the Forest Service prepared an Environmental Impact Statement for the ski area master plan before any site specific projects were prosed or approved" for the other big ski area on Mount Hood, discovery was necessary. Pls.' Resp. to Mot. Expenses 7. In other words, plaintiffs point to the merits of their underlying position as evidence of substantial justification. Plaintiffs also emphasize "the unique facts of this case" and that "RLK never once provided specific citations to case law let alone inform[ed] Plaintiffs that it would seek sanctions."

Page 7 - OPINION AND ORDER

Id. at 9.

It is well-settled that "advancing arguments [that were previously] rejected [by the court] contravenes long-established circuit precedent." Lubin v. Colvin, 2013 WL 4786402, *4 (D. Or. Aug. 30, 2013). Essentially, plaintiffs raise the same arguments in response to RLK's fee request as they did in opposition to RLK's motion for protection. However, this Court previously rejected these arguments on the merits by finding that plaintiffs neglected to establish an extra-record exception that would apply to their 5 U.S.C. § 706(2) claims and otherwise failed to state a claim under 5 U.S.C. § 706(1), which might have allowed record expansion under the cases they cited. See Bark, 2014 WL 715603 at *3-5; see also Or. Natural Resources Council v. Madigan, 980 F.2d 1330, 1332 (9th Cir. 1992) (substantial justification was lacking where "the government only reasserts its position on the merits, and supplies nothing new to justify its position and meet its burden"); Thangaraja v. Gonzales, 428 F.3d 870, 874-74 (9th Cir. 2005) (in the context of a motion for Equal Access to Justice Act fees, "it will be only a decidedly unusual case in which there is substantial justification").

Furthermore, plaintiffs' contention that novel or difficult questions of law were present, such that their requests for discovery were proper and not sanctionable, is not supported by precedent or the evidence of record. Critically, the Court's analysis in granting RLK's motion was neither complex nor extraordinary. See, e.g., Bark, 2014 WL 715603 at *4 (noting that

"district courts have granted motions for protective orders prohibiting discovery in APA proceedings" under analogous circumstances) (citing Int'l Jr. Coll. of Bus. & Tech., Inc. v. Duncan, 937 F.Supp.2d 202, 205-06 (D.P.R. 2012); Sierra Club v. U.S. Dep't of Energy, 26 F. Supp. 2d 1268, 1271-72 (D. Colo.), adopted by 1998 WL 895927 (D. Colo. Oct. 22, 1998)). Therefore, plaintiffs' position was not substantially justified.

II.   Other Circumstances

Plaintiffs next contend that "other circumstances make an award unjust." Pls.' Resp. to Mot. Expenses 10. In particular, plaintiffs argue that: (1) "RLK prevailed, but that is not a basis for an award of sanctions under FRCP 37"; (2) they "brought this case to uphold the public interest in decisions affecting Mt. Hood's alpine environment" and "sought discovery after making extensive and still unsuccessful efforts to obtain information through other mechanisms"; and (3) "RLK intervened in this case of its own accord [and] RLK's decision [has] a cost [that should not be] shift[ed] to non-profit organizations seeking in good faith to uncover relevant facts." Id. at 10-11.

The Court finds that none of these other circumstances make the award of expenses unjust. First, contrary to plaintiffs' assertion, prevailing on a motion for protection is a basis for an award of expenses, except where one of three exceptions in met. See Fed. R. Civ. P. 37; Fed. R. Civ. P. 26; Alexander, 2013 WL 5701432 at *3. Second, the fact that plaintiffs initiated this lawsuit to benefit the public or requested discovery after failing to procure

information through other means is inconsequential. If the Court were to accept plaintiffs' argument, the award of expenses would never be appropriate in environmental lawsuits, irrespective of how egregious the discovery conduct, as the majority of these cases are commenced on behalf of the public by non-profit organizations. Third, RLK's present motion, if successful, would transfer the costs of plaintiffs' decision to pursue improper discovery. As RLK notes, "[i]ntervention is not an invitation to improper discovery or a waiver of a party's right to protect itself." RLK's Reply to Mot. Expenses 4.

Because RLK successfully moved for a protective order and none of the three recognized exceptions apply, the Court must award expenses pursuant to Fed. R. Civ. P. 37 and Fed. R. Civ. P. 26. Thus, the sole remaining issue is the reasonableness of RLK's request.

III. <u>Reasonableness of RLK's Request</u>

Plaintiffs argue that RLK's fee request is excessive and unreasonable. Yet, beyond arguing broadly that RLK's petition is redundant, plaintiffs do not specifically identify any duplicative or otherwise improper billing entries. <u>See</u> Pls.' Resp. to Mot. Expenses 11-13.

In determining a reasonable attorney fee, the court first multiplies "the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate.." <u>Morales v. City of San Rafael</u>, 96 F.3d 359, 363 (9th Cir. 1996) (as amended) (discussing the lodestar method). After calculating this amount,

Page 10 - OPINION AND ORDER

the court considers whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of twelve factors[2] set forth in Kerr v. Screen Guild Extras, Inc., 526 F.2d 67, 70 (9th Cir. 1975), cert. denied, 425 U.S. 951 (1976). Id.

The court is required to ensure an award's reasonableness, regardless of whether the opposing party objected to it. Gates v. Deukmejian, 987 F.2d 1392, 1400-02 (9th Cir. 1992). The court also possesses "considerable discretion . . . in determining what attorney's fee is reasonable." Webb v. Ada Cnty., Idaho, 195 F.3d 524, 526-27 (9th Cir. 1999), cert. denied, 537 U.S. 948 (2002). Accordingly, "the reasonable fee, as calculated by the district court, may fall short of the actual fee that the . . . lawyer charges." Corder v. Gates, 947 F.2d 374, 378 n.3 (9th Cir. 1991) (citation and internal quotations omitted).

A.    Reasonableness of the Requested Rates

RLK seeks the following hourly rates associated with their motion for a protective order[3]: $386.55 for Maynard's 2013 work and

---

[2] These factors are: (1) the time and labor required; (2) the novelty and difficulty of the questions involved; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. Kerr, 526 F.2d at 70.

[3] RLK requests increased rates for fees relating to the present motion. See Maynard Decl. Ex. F. For the reasons discussed below, these fees are disallowed, such that the rates sought in conjunction therewith are immaterial.

$423.75 for his February 2014 work; $450 for Crooks' work through November 2013, $455.45 for Crooks' December 2013 work, and $472.50 for Crooks' February 2014 work; $230.10 for Hunt's October 2013 work, $231.94 for his November 2013 work, $234.77 for work he performed in December 2013, and $263 for his February 2014 work; $216.29 for Regenold's October 2013 work and $218.05 for her November 2013 work. See Maynard Decl. Ex. B. Maynard has over 30 years of experience, Crooks has 17 years of experience, Hunt has four years of experience, and Regenold has two years of experience. See Maynard Decl. ¶¶ 18-21; see also Maynard Decl. Ex. D.

A reasonable rate for legal services is "'calculated according to the prevailing market rates in the relevant community.'" McElmurry v. U.S. Bank Nat'l Ass'n, 2008 WL 1925119, *3 (D. Or. Apr. 30, 2008) (quoting Blum v. Stenson, 465 U.S. 886, 895 (1984)). "This District considers the most recent Oregon State Bar Economic Survey ('OSB Survey') as its 'initial benchmark' in determining whether hourly billing rates are reasonable." Prison Legal News v. Umatilla Cnty., 2013 WL 2156471, *4 (D. Or. May 16, 2013) (citations omitted). "If the rate requested exceeds the average rate reported in the OSB Survey, the burden is on the prevailing party to justify that higher rate." Id. (citation omitted).

Initially, "[t]he general rule is that the relevant community for purposes of the prevailing rate is the forum in which the district court sits." Id. at *5 (citations omitted). Although the majority of RLK's attorneys practice out of Boise, Idaho, the Court uses Portland as the relevant community for determining the

Page 12 - OPINION AND ORDER

prevailing market rate.

Turning to the issue of whether RLK's requested hourly rates are reasonable, the latest OSB Survey, issued in 2012, provides billing rates by locality, years of experience, and area of practice. See generally Maynard Decl. Ex. C.[4] The rates that RLK seeks are significantly higher than average for attorneys with comparable experience; in many instances, RLK's rates exceed the 75th percentile. Compare id., with Maynard Decl. Ex. B. RLK furnished no argument or evidence to justify this increase, beyond declaring that the requested rates are "commensurate with the prevailing rates in the Portland, Oregon legal market and [are] reasonable and customary compared to hourly rates charged by [counsels'] peers in similar actions involving similar issues." Maynard Decl. ¶¶ 18-21; see also Maynard Decl. Ex. D. RLK additionally contends in regard to Crooks that "her rate is not unusual given her experience with complex commercial litigation, her reputation and ability, and given the size and reputation of Perkins Coie LLP." Maynard Decl. ¶ 19.

The Court finds that RLK failed to adequately justify their requested rates. See Prison Legal News, 2013 WL 2156471 at *5-6 (increased rates were not appropriate despite the submission of "declarations from [plaintiff's] own attorneys, expounding upon

---

[4] The 2012 OSB lists the relevant hourly rates as follows: over 30 years experience = $340 average, $350 median, $400 75th percentile; 16-20 years experience = $256 average, $250 median, $300 75th percentile; 4-6 years experience = $210 average, $218 median, $250 75th percentile; 0-3 years experience = $182 average, $175 median, $198 75th percentile. Maynard Decl. Ex. C, at 3-4.

their expertise in the area of prisoners' rights, which the OSB Survey fails to specifically take into account," as well as "eight declarations by other attorneys, who opine that counsels' hourly rates are appropriate given their skill level, the result obtained, the complexity of the case, and the comparable rates of similarly specialized attorneys with equivalent experience"). While Maynard and Crooks have significant experience, because this case has been pending on the docket for approximately one year and the parties have not yet begun litigating its substantive merits, the Court is skeptical of the justification for enhanced rates. Moreover, as discussed above, the Court relied on well-established precedent in limiting review of plaintiffs' claims to the administrative record that was in existence at the time of defendants' challenged decision, indicating that the issues presented by RLK's motion for a protective order were relatively straightforward.

As a result, higher-than-average rates are not reasonable in the case at bar. See, e.g., Knowledge Learning Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., 2011 WL 2133824, *5-6 (D. Or. Apr. 19), adopted by 2011 WL 2115631 (D. Or. May 27, 2011) (awarding the median rate to specialized litigators where the case was insufficiently complex); Prison Legal News, 2013 WL 2156471 at *6 (same). Thus, the Court awards RLK's attorneys the higher of the average or median rate for their respective levels of experience, as set forth in the 2012 OSB Survey, for the purposes of calculating the lodestar amount. A reasonable hourly rate for: Maynard is $350, Crooks is $256, Hunt is $218, and Regenold is

Page 14 - OPINION AND ORDER

$182.

Lastly, RLK requests $142.66 per hour for paralegal Sampo's October 2013 work, $143.80 per hour for her November 2013 work, and $145.56 per hour for work she performed in December 2013. See Maynard Decl. Ex. B. "Although the OSB Survey does not include data on paralegal rates, this District has found such rates reasonable where they do not exceed the average rate for a first-year associate." Prison Legal News, 2013 WL 2156471 at *7 (citations omitted). All of the rates charged by Sampo, who has over a decade of experience, are less than the average rate for a first-year associate in Portland. See Maynard Decl. Ex. D, at 6. The Court awards Sampo her requested rates.

B.  Reasonableness of the Hours Expended

RLK requests an award of fees for 116.6 hours of work undertaken by four attorneys and one paralegal. Specifically, RLK seeks compensation for the following time spent briefing its motion for protection: 17.4 hours for Maynard, 9.3 hours for Crooks, 44.9 hours for Hunt, 3.5 hours for Regenold, and 10.6 hours for Sampo, totaling 85.7 hours. See Maynard Decl. Ex. B. RLK seeks an additional 30.9 hours for preparing the present motion. Maynard Decl. Ex. F.

The hours requested in conjunction with RLK's motion for a protective order are, for the most part, reasonable. Nevertheless, several common billing defects appear in RLK's fee petition, such that reductions are appropriate. Prison Legal News, 2013 WL 2156471 at *7 ("even where, as here, the expended time is reasonable, the

Page 15 - OPINION AND ORDER

court may still reduce the fee award for defects in the . . . motion for fees").

As a preliminary matter, the Court finds the use of four attorneys to litigate RLK's motion for protection excessive. Id. at *8-9 ("[a] party is free to hire and pay as many attorneys as it wishes; nonetheless, that party cannot expect to shift the cost of these inefficiencies to its opponent"). Hunt, who billed the most hours by far, is a four year associate working under the supervision of Maynard and Crooks. See generally Maynard Decl. Exs. B, D. As such, his time was spent discussing the underlying motion with Maynard or Crooks, or conducting legal research and revising his work "pursuant to suggestions from S. Crooks and B. Maynard." Maynard Decl. Ex. B, at 1-4. While the Court acknowledges the necessity of training and monitoring new associates, the fact remains that the majority of hours billed by Hunt were either duplicative of other attorneys' efforts or reflect substantive work that could have been more expediently completed by more experienced counsel. To account for these inefficiencies, Hunt's hours are reduced overall by 75%. See Prison Legal News, 2013 WL 2156471 at *8 (where duplicative, "the court generally excludes the more junior attorney's time"). This results in a deduction of 33.7 hours from Hunt's petition. See Maynard Decl. Ex. B.

Further, Regenold, a two year associate, spent all of the time she billed cite-checking an early version RLK's motion for a protective order, which was reviewed and revised by several other attorneys. "Tasks that are secretarial or clerical in nature, such

Page 16 - OPINION AND ORDER

as proofreading, . . . are not compensable because they are overhead and thus already reflected in the hourly billing rate." Prison Legal News, 2013 WL 2156471 at *9 (citation and internal quotations omitted). Because her entries do not reflect substantive work on this case, the 3.5 hours billed by Regenold are stricken. See Maynard Decl. Ex. B, at 1-2 (10/28/13, 11/5/13, and 11/6/13 entries).

RLK's fee petition also reflects frequent block billing. "This District has specifically cautioned against block billing" because this practice "greatly hinder[s] the court's ability to assess the reasonableness of the time expended." Prison Legal News, 2013 WL 2156471 at *7 (citation omitted). Yet this practice may be "excuse[d] when the billing period is no more than three hours." Id. at *8 (citations omitted). When RLK's attorneys billed for a group of tasks, they primarily did so in smaller blocks of time. See generally Maynard Decl. Ex. B. Accordingly, RLK's block billing entries are stricken only to the extent that they exceed three hours. Thus, Hunt's and Crooks' hours related to RLK's motion for a protective order are lessened by 3.6 hours[5] and 1.7 hours, respectively. See id. at 1, 3-4 (10/24/2013, 11/27/2013, 11/30/2013, 12/2/2013, 12/3/2013, and 12/4/2013 entries).

Additionally, RLK's billing entries for its protective motion

---

[5] Hunt block-billed a total of 14.3 hours that exceeded the accepted three-hour billing period. See Maynard Decl. Ex. B, at 1, 3-4 (10/24/2013, 11/27/2013, 11/30/2013, 12/2/2013, 12/3/2013, and 12/4/2013 entries). Because Hunt is receiving compensation for 25% of his petition, the Court finds a pro rata reduction of the hours stricken for any other reason to be proper.

Page 17 - OPINION AND ORDER

include numerous redundant expenditures. "A court may deduct any time entries indicating that more than one attorney performed the same task." Prison Legal News, 2013 WL 2156471 at *8 (citations omitted). The hours billed by the least senior attorney are therefore stricken.[6] This results in a discounting of 1.0 hour from Crooks' petition. See Maynard Decl. Ex. B, at 3-5 (12/3/2013, 12/4/13, and 2/7/14 entries).

Finally, the Court finds that the hours accrued in conjunction with RLK's fee request are not reasonable. A party entitled to attorney fees may also recover additional amounts, or "fees on fees," necessarily incurred in obtaining an award. See, e.g., SOC-SMG, Inc. v. Christian & Timbers, LLC, 2010 WL 2085076, *6-7 (D. Nev. May 20, 2010) (awarding "fees on fees" under Fed. R. Civ. P. 37). As plaintiffs observe, "RLK seeks over $8,000 for attorney time drafting the motion for expenses seeking to recover approximately $24,000 for pursuing the motion for protective order [but the motion for expenses] has very little in the way of legal analysis on the applicabilty of FRCP 37 and focuses almost entirely on documenting the excessive practices of RLK's attorneys." Pls.' Resp. to Mot. Expenses 12.

The Court recognizes that RLK's counsel was required to assess and analyze whether to bring a motion for expenses pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 37. The Court also acknowledges

---

[6] The Court, however, declines to strike the duplicative billings for conferences between RLK's counsel and Sampo because "such conferences are reasonably necessary to ensure that the work delegated by attorneys to paralegals is properly performed." Prison Legal News, 2013 WL 2156471 at *8 n.9.

that, in general, it takes time to assemble a fee petition. Regardless, the hours expended in preparing the present motion are improvident. For example, Hunt spent more than ten hours researching attorney fees and revising his work; although it contains relevant authorities pertaining to Fed. R. Civ. P. 37, the present motion, along with the accompanying declaration, are no more complex than what one would find in any ordinary fee petition. See Maynard Decl. Ex. F; see generally RLK's Mem. in Supp. of Mot. Expenses; RLK's Reply to Mot. Expenses. Similarly, much of RLK's petition is vague and/or duplicative. See, e.g., Maynard Decl. Ex. F (reflecting numerous entries that contain descriptions of "further review" or "further work"). The work of three attorneys and one paralegal could also have been more efficiently consolidated.

As such, the Court exercises its discretion and concludes that "fees on fees" are not appropriate here, especially in light of plaintiffs' statuses as non-profit organizations that primarily exist to benefit the public. In other words, payment of fees arising out of RLK's motion for a protective order are sufficient to adequately deter and sanction plaintiffs for their oversights during the discovery process.

In sum, after taking the above-listed deductions, 17.4 hours of Maynard's time is awarded at $350 per hour ($6,090 total), 6.6 hours of Crooks' time is awarded at $256 per hour ($1,689.60 total), 7.6 hours of Hunt's time is awarded at $218 per hour ($1,656.80 total), 3.2 hours of Sampo's time is awarded at $142.66

per hour ($456.50 total), 2.4 hours of Sampo's time is awarded at $143.80 per hour ($345.12 total), and 5 hours of Sampo's time is awarded at $145.56 per hour ($727.80 total). Based on these calculations, the Court awards RLK $10,965.82 in attorney fees. In arriving at this sum, the Court considered the pertinent factors outlined in Kerr and finds that no further adjustments are necessary.

C.    Costs

RLK seeks to recover an additional $2,181.88 in costs; this amount includes fees for photocopies, printing, long-distances telephone calls, and on-line legal research. See Maynard Decl. Ex. E. Plaintiffs argue that RLK is not entitled to recoup $2,150.33 worth of on-line legal research costs, as they constitute "overhead and therefore [are] not properly considered." Pls.' Resp. to Mot. Expenses 12. The cases that plaintiffs cite in support of this proposition indicate only that research fees are not taxable as costs pursuant to Fed. R. Civ. P. 54 and 28 U.S.C. § 1920. However, the "present motion is not brought pursuant to Rule 54, it is brought pursuant to Rule 37, which expressly allows for the recovery of 'expenses' when a motion [for a protective order] is granted." Aevoe Corp. v. AE Tech Co., Ltd., 2013 WL 5324787, *8-9 (D. Nev. Sept. 20, 2013); see also Alutiiq Int'l Solutions, LLC v. Lyon, 2012 WL 4182026, *4-5 (D. Nev. Sept. 17, 2012) (awarding on-line legal research costs under Fed. R. Civ. P. 37).

Nevertheless, as discussed above, the legal research performed in affiliation with the present motion was excessive. Accordingly,

the Court's disallows $1,317.94 in on-line legal research costs that were accrued in conjunction therewith. <u>See</u> Maynard Decl. Ex. E, at 1; Maynard Decl. Ex. F. Costs are therefore awarded in the reduced sum of $863.94.

<b>CONCLUSION</b>

RLK's motion for an award of expenses (doc. 89) is GRANTED in part, such that RLK is awarded a total of $11,829.76 in attorney fees, costs, and other expenses.

IT IS SO ORDERED.

Dated this 17th of June, 2014.

_____

Ann Aiken

United States District Judge