Oliver J. H. Stiefel, OSB No. 135436
oliver@crag.org – (503) 227-2212
Ralph O. Bloemers, OSB No. 984172
ralph@crag.org – (503) 525-2727
Christopher G. Winter, OSB No. 984355
chris@crag.org – (503) 525-2725
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205
Fax: (503) 296-5454

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT

## DISTRICT OF OREGON

## PORTLAND DIVISION

| | |
|---|---|
| **BARK,** an Oregon non-profit corporation, **FRIENDS OF MOUNT HOOD,** an Oregon non-profit corporation, **NORTHWEST ENVIRONMENTAL DEFENSE CENTER,** an Oregon non-profit corporation, **THE SIERRA CLUB**, a California non-profit corporation,<br><br>        Plaintiffs,<br><br>        v.<br><br>**LISA NORTHROP,** Forest Supervisor of the Mt. Hood National Forest, **BILL WESTBROOK,** Zigzag District Ranger, **JIM PEÑA**, Regional Forester for Region 6, and the **UNITED STATES FOREST SERVICE**, a federal agency; **WILLIAM STELLE**, Regional Administrator of the West Coast Region, and the **NATIONAL MARINE FISHERIES SERVICE**, a federal agency,<br><br>        Defendants,<br><br>**RLK AND COMPANY**, an Oregon corporation,<br><br>        Defendant-Intervenor. | Case No. 3:13-cv-00828-AA<br><br>**PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR PARTIAL RECONSIDERATION** |

# INTRODUCTION

Plaintiffs have asked this Court to reconsider a narrow element of its March 25, 2015 Opinion and Order. Plaintiffs present their motion on both legal and factual grounds.

Specifically, Plaintiffs seek reconsideration of the Court's finding that the construction and operation of 17 miles of bike routes on the fragile, high-elevation slopes of Mt. Hood would not cause "habitat degradation" within the meaning of the Aquatic Conservation Strategy ("ACS") of the Northwest Forest Plan ("NWFP"). Plaintiffs respectfully request reconsideration of this finding because it is untethered to any finding made by the Forest Service on the administrative record before the Court. Moreover, since the Opinion and Order, the National Marine Fisheries Service ("NMFS") has produced new factual evidence that directly informs the question of whether a new, chronic source of sedimentation within Riparian Reserves would cause "habitat degradation." In particular, in its most recent Biological Opinion ("Reinitiation BiOp"), NMFS found that construction and operation of the bike routes would result in short- and long-term sediment impacts to Project area watersheds, degrading aquatic habitat for threatened Lower Columbia River ("LCR") steelhead. Plaintiffs ask the Court to evaluate NMFS's findings in the context of reviewing the question of "habitat degradation."

In response, Defendants try to shield this Court's finding, but premise their arguments on an overly narrow reading of the standard of review, and an artificial characterization of the question presented by Plaintiffs' motion. The governing standard of review provides ample grounds for this Court to review the merits of Plaintiffs' motion, and Defendants fail to rebut Plaintiffs' legal and factual bases for reconsideration. In the circumstances of this case, remand to the Forest Service to address the "habitat degradation" question in the first instance is warranted.

**Plaintiffs' Reply ISO Reconsideration** - 1
*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

**ARGUMENT**

**I.    The Standard of Review for Reconsideration Does Not Preclude This Court From Reaching the Merits of Plaintiffs' Motion.**

As a threshold matter, all Parties agree that this Court has the inherent power, derived from the common law, to reconsider its Opinion and Order.  *See* FD Resp. at 3–4.[1]  The Parties further agree that Rule 54 of the Federal Rules of Civil Procedure supplements this common-law authority, providing a basis for revising a prior order before entry of final judgment adjudicating all claims.  *See id.*  Thus, there is no dispute that this Court may revisit the Opinion and Order.

Courts generally evaluate three factors when reviewing a motion for reconsideration: (1) where there has been an intervening change in law, (2) new evidence has become available, or (3) it is necessary to correct clear error or prevent manifest injustice.  *See* Op. Memo at 3, ECF_216.  Plaintiffs present their motion primarily on grounds (2) and (3).  In addition, a court may reconsider and revise a prior decision "for any reason it deems sufficient, even in the absence of new evidence or an intervening change in or clarification of controlling law."  *Abada v. Charles Schwab & Co., Inc.*, 127 F. Supp. 2d 1101, 1102 (S.D. Cal. 2000).

As discussed in the Opening Memorandum, this Court should reach the merits of Plaintiffs' motion because (a) the Court committed error by supplying a basis for ACS consistency that was not advanced by the agency in the EA/DN/FONSI; and (b) new facts bearing on the nature and magnitude of the Project's impacts are present.  Defendants fail to show how Plaintiffs' motion does not accord with the governing standard of review.

With respect to (a), Defendants argue that Plaintiffs already raised the present arguments in their earlier summary judgment briefing, but overlook or misapprehend Plaintiffs' stated basis

---

[1] Because their arguments are largely duplicative, Federal Defendants and Defendant Intervenor are collectively referred to as "Defendants," the former abbreviated as "FD" and the latter as "DI."  Citations to briefs are to internal pagination, not the ECF Bates Stamp.

**Plaintiffs' Reply ISO Reconsideration** - 2
*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

for reconsideration. Here, Plaintiffs ask the Court to reconsider the predicate finding made in support of the NFMA holding, specifically, that the Project would not cause habitat degradation within the meaning of the ACS. Contrary to Defendants' argument, Plaintiffs did not "explicitly argue" this issue in the earlier briefing—principally because the agency never made the habitat degradation finding on the administrative record.

In asking this Court to revisit the habitat degradation finding, Plaintiffs submit that it is appropriate for the Court to consider new facts and circumstances, which include the completion of the restoration activities, NMFS's decoupling of restoration from the construction/operation components of the Project, and NMFS's findings that the construction/operation of the bike routes would cause take of a listed species. This new information is relevant to the Court's evaluation of its own habitat degradation finding. Defendants suggest that it would be improper for the Court to address this new evidence, citing the standard of review for record review cases. Defendants fail to correlate that standard to the standard of review for motions for reconsideration, which permits a court to reconsider a previous determination "when new evidence becomes available," among other reasons. *See supra*.

Accordingly, Defendants' arguments appear to be based on a misapprehension of Plaintiffs' motion. Plaintiffs do not argue that the Court should consider the new circumstances and information for purposes of reassessing the merits of the Forest Service's 2012 decision; rather, Plaintiffs ask the Court to review the new evidence in reviewing *its own* habitat degradation finding, and the implications of that finding with respect to the holding on Plaintiffs' ACS consistency claim.

In a similar vein, Defendants mistakenly argue that Plaintiffs are precluded from contesting the relevance of *Bark v. U.S. Bureau of Land Management*, 643 F. Supp. 2d 1214

**Plaintiffs' Reply ISO Reconsideration** - 3

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

Crag Law Center
917 SW Oak St., Suite 417
Portland, OR 97205
Tel. (503) 525-2727

("*Bark v. BLM*") (D. Or. 2009). Defendants argue that it is "inappropriate" for Plaintiffs to argue the case's relevance as a threshold matter, but misconstrue the purpose of Plaintiffs' citation to the case. Plaintiffs do not argue that *Bark v. BLM* represents an "intervening change in law," such that it provides a basis for reconsideration. *See supra*. Rather, should the Court review its habitat degradation finding, Plaintiffs submit that it is appropriate for the Court to revisit its reliance on that case, because there, unlike here, the agency made an explicit habitat degradation finding on the record.

With respect to (b), Defendants, citing zero case law in support, imply that Plaintiffs are time-barred from bringing this motion on equity grounds. Not so.[2] In recognition of administrative efficiency and judicial economy, Plaintiffs decided to bring all of their final arguments in one set of proceedings, rather than piecemeal the remainder of the litigation. Plaintiffs waited for the close of further administrative proceedings in this case—preparation of the second BiOp, and the Forest Service's internal process regarding NEPA supplementation—because Plaintiffs could not predict the outcome of those proceedings. In particular, had the Forest Service decided to go back and prepare supplemental NEPA, it may have decided to amend or alter its decision. *See Robertson v. Methow Valley Citizens Council*, 490 U.S. 332, 350 (1989) (NEPA procedures "are almost certain to affect the agency's substantive decision"); *Lemon v. Geren*, 514 F.3d 1312, 1315 (D.C. Cir. 2008) ("[I]f the agency's eyes are open to the environmental consequences of its actions * * * it may be persuaded to alter what it proposed."). Plaintiffs filed their motion only two months after the Forest Service's 2016 New Information Report ("NIR"), pursuant to a stipulated schedule that coordinated all the briefing in an efficient manner. *See* ECF_213. Defendants—aside from perfunctorily noting the date of the Opinion

---

[2] Notably, Defendants do not argue that they were prejudiced in any way (they were not).

**Plaintiffs' Reply ISO Reconsideration** - 4
*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

and Order and the date this motion was filed—offer no argument as to why this approach was somehow "inequitable."

In sum, this Court has the authority—through its common-law power and Rule 54(b)—as well as the grounds—both legal and factual—for reconsidering its prior finding that the Project would not cause habitat degradation, and thus revisiting its NFMA holding.

**II.    Reconsideration is warranted because the Forest Service on the record never concluded that the bike routes would not cause habitat degradation.**

Defendants zero in on Plaintiffs' legal basis for seeking reconsideration, citing this Court's finding that the Project would not cause habitat degradation within the meaning of the ACS.  *See* FD Resp. at 11–12; DI Resp. at 5.  The problem with this finding, as evidenced by Defendants' citation to the Opinion and Order—not the record—is that the Forest Service did not make this finding in the first instance.  Rather than citing to the record, the Court and Defendants cite to *Bark v. BLM*, but that case is readily distinguishable, as explained in Plaintiffs' Opening Memorandum and below.  Absent record support for the proposition that the construction and operation of 17 miles of bike routes in sensitive, high-elevation watersheds would not cause habitat degradation, there is no basis to sustain the holding that the Project is consistent with the ACS and NFMA.

Defendants offer a handful of additional responses, but none are meritorious.  For example, Defendants note that the Forest Service assessed ACS consistency, but their citation only further highlights the basis for Plaintiffs' motion.  *See* FS_28087 ("With the concurrent implementation of the restoration projects * * * [t]he project is consistent with the Aquatic Conservation Strategy."); *see also* DI Resp. at 9 (appealing to the "net positive" effects of restoration).  This passage states precisely the conflict that remains unresolved by the Court's Opinion and Order, for which Plaintiffs seek reconsideration: the Forest Service on the

**Plaintiffs' Reply ISO Reconsideration** - 5

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

administrative record concluded that the restoration measures would "offset" the impacts from construction and operation; it did *not* conclude that construction/operation of 17 miles of new routes would not cause habitat degradation within the meaning of the ACS. The habitat degradation finding therefore is central to resolution of Plaintiffs' NMFA claim: if the Project does indeed cause habitat degradation, and the Forest Service used the restoration measures to "offset" the habitat degrading impacts, then the Project is inconsistent with ACS Standard WR-3. *See* Op. Memo at 8–9.

In addition, Defendants note that the Project involves some measures to "avoid and minimize" adverse impacts, but fail to demonstrate why that fact has any direct bearing on the question of "habitat degradation." Indeed, as reflected by the record, even with the Project Design Criteria, the construction and operation of the bike trails would be a chronic source of sediment, impacting Critical Habitat for LCR steelhead. *See* Op. Memo at 7–8. This is exactly why the Forest Service developed the restoration measures—to try to "offset" the negative habitat impacts of the bike routes. *See, e.g.*, FS_27698; FS_27805–06.[3]

Finally, Defendants accuse Plaintiffs of trying to "divide and conquer" the Project, as opposed to reviewing all of the Project elements as a whole. But assessing whether the Project's restoration component is being used to offset the habitat degrading impacts of construction/operation is not a requirement invented by Plaintiffs—that is what WR-3 specifically requires. It was the Forest Service that modified the original Project to include restoration measures. FS_12030. It was the Forest Service that chose to make its effects determinations in reliance on the offsetting influence of the restoration measures. FS_24051.

---

[3] Defendants also suggest that the agency crafted the Project Design Criteria to "ensure compliance with WR-3," DI Resp. at 5, but that argument cannot be squared with the record. The first time the Forest Service ever mentioned WR-3 was the Appeal Responses—*well after* the Project had been designed, evaluated, and opened up for public comment.

**Plaintiffs' Reply ISO Reconsideration** - 6

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

And it was the Forest Service that evaluated ACS consistency by appealing to the benefits of restoration. *See* Op. Memo at 8.

Critically, it was also incumbent on the Forest Service to square this Project design with the plain mandates of the ACS. *See, e.g.*, FS_3164 (NWFP EIS, providing: "Frequently, mitigation was used to attempt to neutralize the negative effects on riparian-dependent resources. Implementing a project placed the risk on the mitigation measure, which might not have achieved the desired result. * * * *The risk has been shifted under the ACS* * * *.") (emphasis added); *Pac. Coast Fed'n of Fishermen's Ass'ns v. Nat'l Marine Fisheries Serv.*, 265 F.3d 1028, 1032 (9th Cir. 2001) ("*PCFFA*") ("The ACS also has binding standards and guidelines that restrict certain activities within areas designated as riparian reserves or key watersheds.").

If it is the case that the Forest Service believes that the construction and operation of the bike trails—independent from restoration measures—would not cause habitat degradation, then the agency must make that finding on the public record, in accordance with NEPA. But because the agency did not make this finding on the record before the Court, Plaintiffs respectfully ask the Court to reconsider its finding on the matter and revisit its ACS holding.

**III.     New circumstances and information bear directly on whether the construction and operation of the bike routes would cause "habitat degradation."**

Under the standard of review for motions for reconsideration, this Court may take into account new evidence that has arisen during the course of the proceedings. In this case, the new evidence includes the completion of the restoration work and the publication of NMFS's findings and conclusions in the Reinitiation BiOp, where NMFS specifically decoupled restoration from the impacts of bike route construction and operation in its effects analysis. Using this analytical framework, NMFS found that the "revised proposed action" would degrade the quality and

**Plaintiffs' Reply ISO Reconsideration** - 7
*Bark et al. v. Northrop et al.*,
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

quantity of aquatic habitat for listed LCR steelhead.  *See* Op. Memo at 12.[4]

Defendants offer no valid basis for their argument that this Court should turn a blind eye to current conditions.  Defendants note that restoration has been completed in accordance with a stipulation of the Parties, and observe that NMFS was required to evaluate restoration as part of the "environmental baseline."  Plaintiffs do not contest those points.[5]  But neither point precludes this Court from considering the new evidence bearing directly on the present motion, which asks the Court to reconsider its finding that the Project would not cause habitat degradation.

Defendants' briefing brings the relevance of this new evidence into sharper focus.  For example, Defendants accuse Plaintiffs of characterizing "habitat degradation" according to a "hair-trigger" definition.  But NMFS in the Reinitiation BiOp concluded that construction and operation of the bike routes would contribute short- and long-term habitat degradation.  *See, e.g.*, NMFS2AR _1676 ("Suspended sediments associated with the operation and maintenance of the bike park will occur annually and will be generated for the life of the bike park.").  Defendants provide no support for their argument that the impacts from an action that would "reduce spawning ground quality, limit egg and fry success, reduce pool volume, and reduce prey availability due to increased substrate embeddedness," *id.*, are somehow "de minimis."

Defendants also suggest that NMFS did not find significant impacts at the watershed

---

[4] As described in Plaintiffs' concurrently filed briefing on summary judgment, this degree of habitat degradation was not disclosed or considered in the NEPA analysis, because the Forest Service presumed that all impacts would be "offset" by the restoration activities.  The Forest Service made this finding in conjunction with its NLAA finding regarding LCR steelhead.

[5] It is worth noting that Defendants agreed to the stipulation in lieu of defending against Plaintiffs' Motion for a Preliminary Injunction.  ECF_37.
Furthermore, Defendant-Intervenor's suggestion that Plaintiffs have "drawn-out" this litigation is not well taken.  The length of this case is due to the intervening administrative actions of the Forest Service and NMFS, including (1) preparing the 2013 NIR; (2) revisiting the NLAA concurrence; (2) preparing the 2014 BiOp; (3) preparing the 2014 NIR; (4) assessing whether reinitiation was required; (5) preparing the Reinitiation BiOp; (6) preparing the 2016 NIR.

**Plaintiffs' Reply ISO Reconsideration** - 8

*Bark et al. v. Northrop et al.*,
Case No. 3:13-cv-828-AA

Crag Law Center
917 SW Oak St., Suite 417
Portland, OR 97205
Tel. (503) 525-2727

level, but fail to connect those statements with the requirements of the ACS.  *See PCFFA*, 265 F.3d at 1036–37 ("Appropriate analysis of ACS compliance is undertaken at both the watershed and project levels.").  At the project level, NMFS found that the construction and operation of the bike routes would have adverse impacts on LCR steelhead and Critical Habitat.  *See, e.g.*, NMFS2AR_1673 ("While principal spawning and rearing habitat are located downstream of the action area, the aggregate effects of chronic sediment accumulation may have localized effects.").  Under the ACS, "[m]anagement actions that do not maintain the existing condition or lead to improved conditions in the long term would not 'meet' the intent of the [ACS] and thus, should not be implemented.").

NMFS's findings in the Reinitiation BiOp that the construction and operation of the bike routes would degrade aquatic habitat to the extent that the Project would result in "take" of threatened LCR steelhead and would adversely affect designated critical habitat are directly relevant to the "habitat degradation" question presented in this motion.  NMFS2AR_1634, 1636.

**IV.    Defendants are mistaken that *Bark v. BLM* is on point.**

As a final matter, Plaintiffs briefly respond to Defendants' portrayal of *Bark v. BLM*, to clear up Defendants' mischaracterizations of that case on both the law and the facts.

On the law, Defendants suggest that *Bark v. BLM's* "key line of reasoning" was the observation that "evidence * * * that a project will result in some degradation does not, standing alone, constitute ACS noncompliance."  FD Resp. at 12 (citing 643 F. Supp. 2d at 1234–35).  Defendants are wrong.  As Plaintiffs pointed out in their Opening Memorandum, this statement from *Bark v. BLM* was dictum.  When the court offered this alleged "key line of reasoning," it expressly cabined the statement: "*Even if* the BLM had found that the adopted proposal would increase effects in the short-term to detectable levels, it would still not be in violation of the ACS

**Plaintiffs' Reply ISO Reconsideration** - 9

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

objectives." 643 F. Supp. 2d at 1234 (emphasis added).

The court already had held that the agency reasonably concluded that the project would not violate the ACS objectives on account of the fact that the project "would not lead to detectable increases in sediment and turbidity in streams." *Id.* at 1234. It did so on the basis of numerous findings. *Id.* at 1225, 1226, 1234. Accordingly, the statement that followed "Even if," on which Defendants rely, was dictum. *See* Blacks Law Dictionary (6th Ed. 1991) (defining "dicta" as those "[o]pinions of a judge which do not embody the resolution or determination of the specific case before the court."). Defendants present no argument to the contrary.

In any event, on the facts, the statements from *Bark v. BLM* are inapplicable because the Project here involves *long-term* sediment inputs. *See* NMFS2AR_1676 (suspended sediments for the life of the Project). In addition to the temporal differences between the instant Project and the one at issue in *Bark v. BLM*, there are key differences in the magnitude of impacts.

Defendants observe that the project in *Bark v. BLM* involved 85 acres of thinning in Riparian Reserves, but fail to mention that the logging would be carried out primarily via helicopter yarding. *Id.* at 1225. Defendants also fail to mention that the project did "not incorporate road construction in the [Riparian Reserves]". *Id.* Moreover, the agency there had taken steps to remove the risk of short-term turbidity by eliminating culvert repair and replacement. *Id.* Finally, that project involved 60-foot buffers around streams, again, to prevent increases in stream turbidity. *Id.* Given the design measures in *Bark v. BLM*, "it [was] unlikely there would be increased sediment from the proposed action; in the event there is some increase, it will probably be too small to measure or observe." 643 F. Supp. 2d at 1225.

Here, in contrast, the Project involves the construction of 17 miles of road-like bike routes that would convert 12 acres of land to bare compacted soils. *See* FS_27782. Two acres of

**Plaintiffs' Reply ISO Reconsideration** - 10

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

Riparian Reserves would be directly impacted within sensitive headwater watersheds. *See* FS_27803 (routes would be a "chronic sediment source," similar to roads). There would be 22 new stream crossings, and all the trails would converge "directly adjacent to a stream that is critical habitat for steelhead * * *." FS_24000. Project-related sediment inputs would be measured in tons. *See* Op. Memo at 7, 14. The Forest Service should be made to determine, in the first instance, whether these impacts to the sensitive headwater drainages on the flanks of Mt. Hood, within Critical Habitat for LCR steelhead, constitute "habitat degradation" within the meaning of the ACS.

IV.     **Conclusion**

For all of the foregoing reasons, and those stated in their Opening Memorandum, Plaintiffs respectfully ask the Court to grant their motion, revisit the finding as to "habitat degradation," and remand to the Forest Service to address the question in the first instance.

Respectfully submitted this 18th day of April 2017.

        /s/ Oliver J. H. Stiefel
Oliver J. H. Stiefel, OSB No. 135436
oliver@crag.org – (503) 227-2212
Ralph O. Bloemers, OSB No. 984172
ralph@crag.org - (503) 525-2727
Christopher G. Winter, OSB No. 984355
chris@crag.org - (503) 525-2725
Crag Law Center
917 SW Oak Street, Suite 417
Portland, OR 97205
Fax: (503) 296-5454

Attorneys for Plaintiffs

**Plaintiffs' Reply ISO Reconsideration** - 11

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

## TABLE OF CITATIONS

| Forest Service Administrative Record ("FS") | | |
|---|---|---|
| **FS_** | **DATE** | ***Author* / TITLE** |
| 244–871 | 1990 | *U.S. Forest Service*, Land and Resource Management Plan – Mt. Hood National Forest |
| 2954–4594 **3164** | 2/1/1994 | *U.S. Forest Service*, Final Environmental Impact Statement on Management of Habitat for Late-Successional and Old-Growth Forest Related Species Within the Range of the Northern Spotted Owl |
| 1812–2850 | 1/1/1991 | *Forest Ecosystem Management Assessment Team*, Forest Ecosystem Management: An Ecological, Economic, and Social Assessment |
| 12027–12054 **12030** | 11/24/2010 | *U.S. Forest Service*, Proposed Action |
| 12295–12856 | 3/3/2011 | *U.S. Forest Service*, Timberline Mountain Bike Trails and Skills Park – Preliminary Assessment |
| 2954–4594 | 2/1/1994 | *U.S. Forest Service*, Final Environmental Impact Statement on Management of Habitat for Late-Successional and Old-Growth Forest Related Species Within the Range of the Northern Spotted Owl |
| 23464–23485 | 6/13/2011 | *William Stelle*, Endangered Species Act Section 7 Consultation – Letter of Concurrence from NMFS |
| 23998–24000 **24000** | 6/17/2011 | *Tom Black / Todd Parker*, Emails discussing modeling |
| 24001–24081 **24051** | 6/22/2011 | *Katheryn Arendt*, Fisheries Biological Assessment – Timberline Downhill Bike Park |
| 27628–27720 **27698** | 7/11/2012 | *Katheryn Arendt*, Fisheries Biological Evaluation – Timberline Downhill Bike Park |
| 27731–28084 **27782, 27803, 27805, 27806** | 11/2012 | *U.S. Forest Service*, Timberline Ski Area Mountain Bike Trails and Skills Park: Environmental Assessment |
| 28085–28108 **28087** | 11/19/2012 | *Christopher Worth*, Timberline Ski Area Mountain Bike Trails and Skills Park – Decision Notice and Finding of No Significant Impact |

///

///

///

///

**Plaintiffs' Reply ISO Reconsideration** - i

*Bark et al. v. Northrop et al.*,
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

| Forest Service Supplemental Record ("SUPP") | | |
|---|---|---|
| **SUPP_** | **DATE** | *Author* / TITLE |
| 1287–1439 | 1994 | *U.S. Forest Service / U.S. Bureau of Land Management*, Standards and Guidelines for Management of Habitat for Late-Successional and Old-Growth Forest Related Species Within the Range of the Northern Spotted Owl |

| Forest Service Second Supplemental Record ("FS2ndSUPP") | | |
|---|---|---|
| **FS2ndSUPP_** | **DATE** | *Author* / TITLE |

| Forest Service Fourth Supplemental Record ("F4thSUPP") | | |
|---|---|---|
| **FS4thSUPP_** | **DATE** | *Author* / TITLE |

| NMFS Administrative Record ("NMFS") | | |
|---|---|---|
| **NMFS_** | **DATE** | *Author* / TITLE |
| 727–799 | 8/4/2014 | *National Marine Fisheries Service*, Endangered Species Act Biological Opinion for the Timberline Downhill Bike Park, Still Creek, Sand Canyon, Glade and West Fork Salmon River Sub-Watersheds (HUCs 170800010201, 170800010202, 170800010101), Mount Hood National Forest, Clackamas County, Oregon (signed) |

| NMFS Second Administrative Record ("NMFS2AR") | | |
|---|---|---|
| **NMFS2AR_** | **DATE** | *Author* / TITLE |
| 1633–1709<br>**1634, 1636,**<br>**1673, 1676** | 8/4/2016 | *National Marine Fisheries Service*, Biological Opinion resulting from Reinitiation of the Endangered Species Act Consultation for the Timberline Downhill Bike Park, Still Creek, Sand Canyon, Glade and West Fork Salmon River Sub-Watersheds (HUCs 170800010201, 170800010202, 170800010101), Mount Hood National Forest, Clackamas County, Oregon |

**Plaintiffs' Reply ISO Reconsideration** - ii

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*

## CERTIFICATE OF SERVICE

I, Oliver Stiefel, hereby certify that I electronically transmitted the foregoing via ECF to all parties named below:

**STEPHEN J. ODELL, OSB #903530**
steve.odell@usdoj.gov
**SEAN E. MARTIN, OSB # 054338**
sean.martin@usdoj.gov
Assistant United States Attorneys
1000 SW Third Avenue, Suite 600
Portland, OR 97204
Telephone: (503) 727-1010
Facsimile: (503) 727-1117

Of Attorneys for Federal Defendants

**SARAH J. CROOKS, OSB NO. 971512**
scrooks@perkinscoie.com
PERKINS COIE  LLP
1120 N.W. Couch Street, Tenth Floor
Portland, OR 97209-4128
Telephone: (503) 727-2000
Facsimile: (503) 727-2222
**ROBERT A. MAYNARD, ISB NO. 5537, PRO HAC VICE**
rmaynard@perkinscoie.com
**ERIKA E. MALMEN, ISB NO. 6185, PRO HAC VICE**
emalmen@perkinscoie.com
PERKINS COIE  LLP
1111 West Jefferson Street, Suite 500
Boise, ID 83702
Telephone: (208) 343-3434
Facsimile: (208) 343-3232

Attorneys for Defendant-Intervenor RLK and Company

　　　　　　　　　　　　/s/ Oliver J. H. Stiefel
　　　　　　　　　　　Oliver J. H. Stiefel, OSB No. 135436

**Plaintiffs' Reply ISO Reconsideration** - iii

*Bark et al. v. Northrop et al.,*
Case No. 3:13-cv-828-AA

*Crag Law Center*
*917 SW Oak St., Suite 417*
*Portland, OR 97205*
*Tel. (503) 525-2727*